UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARIK WILLIAMS,

      Plaintiff,

      v.

CALIFORNIA HIGHWAY PATROL, et al.,

      Defendants.

No.  2:25-cv-787 DAD-SCR

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding pro se in this action against the California Highway Patrol ("CHP") and CHP Officer Brett Wade.  He challenges a February 21, 2025 vehicle stop by Officer Wade, which led Officer Wade to impound his vehicle.  Before the Court is Defendants' motion to dismiss this action for failure to state a claim upon which relief can be granted.  ECF No. 17.

For the reasons explained below, the undersigned recommends dismissal of every claim, with leave to amend only as to the claim for unreasonable seizure under the Fourth Amendment. Through amendment, that claim may be cognizable only as against Officer Wade, and only for certain injunctive relief.

## I.    BACKGROUND

### A.  Pre-Stop Evidence

Defendants' request for judicial notice includes evidence concerning one of Plaintiff's

1

earlier encounters with CHP.  On May 27, 2024, CHP Officer M. Joyner cited Plaintiff for driving his "dark colored Ford pickup" with an expired registration and without California-issued license plates.  ECF No. 17-2 at 13, 17.  Joyner's declaration in *People v. Arik Averill Ryder Williams*, Case No. 24TR126709 ("*Williams I*"), asserts that Plaintiff was not carrying a driver's license and was instead identified by his U.S. passport.  *Id.* at 14.  Plaintiff signed the citation but added that the signature was "under duress[,]" citing UCC 1-308.  *Id.* at 13.  On September 18, 2024, the court found Plaintiff guilty of a violation of California Vehicle Code § 4000(a)(1), operation of an unregistered vehicle.  *Id.* at 18.

B.  Complaint Allegations and Aftermath

On March 10, 2025, Plaintiff initiated this case by concurrently filing the Complaint and a motion for a Temporary Restraining Order ("TRO").  ECF Nos. 1-2.  The Complaint alleges that on February 21, 2025, Officer Wade stopped Plaintiff while he was "lawfully traveling on a public road for personal, non-commercial purposes."  ECF No. 1 at 2.  Officer Wade stopped Plaintiff, and eventually impounded the vehicle, based solely on the alleged failure to display a valid California license plate.  *Id.*  The Complaint argues that this violation did not demonstrate "a true public safety concern" or reflect "any observation of unsafe driving or criminal conduct."  *Id.*  This impoundment caused irreparable injury by leaving Plaintiff without means to work, attend appointments, or perform daily tasks.  *Id.*

Based on the stop at issue, Officer Wade cited Plaintiff for driving with an expired registration under California Vehicle Code § 4000(a)(1), driving a vehicle exceeding the class for which he was licensed under California Vehicle Code § 12500(d), towing an excess of 14,000 pounds, and unsafe towing.  ECF No. 17-2 at 7.  A state court hearing on the citation was set for April 29, 2025, which would become *People v. Arik Averill Ryder Williams*, Case No. 25TR129017 ("*Williams II*").  *Id.*

On February 24, 2025, in *Williams v. California Highway Patrol, et al.*, Case No. 25CV14281 ("*Williams III*"), Plaintiff petitioned the Amador County Superior Court for an emergency injunction to release his car from impoundment based on violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.  ECF No. 17-2 at 24.  Later that day,

2

the presiding judge denied an emergency hearing for failure to show irreparable harm or proof of notice to Defendants CHP and Officer Wade.  ECF No. 17-2 at 32-33.  The judge instead set a noticed hearing for April 9, 2025.  *Id.* at 33.  Plaintiff moved for reconsideration of the denial, but the case was dismissed without prejudice on March 3, 2025 by his request before the court ruled on his motion.  *Id.* at 21, 34.

On April 30, 2025, the Amador County Superior Court entered a guilty verdict in *Williams II* with a fine of $495 after "trial by declaration" because Plaintiff did not attend the hearing.  ECF No. 17-2 at 9 (citing Cal. Veh. Code §§ 4000(a)(1), 12500(d)).

C.  Causes of Action

Based on Officer Wade's stop and the vehicle's impoundment, the Complaint alleges violation of a "Fundamental Right to Travel" and a "constitutional right" to use public highways for personal travel.  ECF No. 1 at 3.  It argues that imposing licensing and registration requirements on such a fundamental right, and impounding a vehicle for failure to comply, is therefore unconstitutional.  *Id.* at 3-4.  The Complaint further alleges that Officer Wade's unsanctioned stop, warrantless search, and immediate handcuffing[1] of Plaintiff were unconstitutional and therefore provide basis for a claim under 42 U.S.C. § 1983.  *Id.* at 4. Plaintiff sought immediate return of the vehicle;[2] an order enjoining Defendants from stopping, detaining, citing, or impounding vehicles for lack of a driver's license or vehicle registration during private travel; prohibition from "further retaliatory or pretextual enforcement actions" for asserting Plaintiff's right to travel; and reimbursement of costs and other expenses stemming from impoundment of the car and release thereof, which the undersigned interprets as a request for damages.  *Id.* at 5-6.

////

---

[1]  Although the Complaint describes the handcuffing as "use of excessive force[,]" the undersigned does not interpret this to allege a separate excessive force claim.  ECF No. 1 at 4.  To the extent that there is one, Plaintiff does not respond to Defendants' argument that such a claim should be dismissed.  *See* ECF No. 17-1 at 15; ECF No. 18.

[2]  Following an evidentiary hearing on the TRO motion, Defendants asserted that Plaintiff's vehicle has been released from impoundment "to the lender and legal owner of the vehicle, Wells Fargo Auto."  ECF No. 15 at 2.

## II.    LEGAL STANDARDS

A.  Dismissal Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge a federal court's jurisdiction over the subject matter of a claim.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a factual attack, the challenger provides evidence that an alleged fact is false resulting in a lack of subject matter jurisdiction.  *Safe Air for Everyone*, 373 F.3d at 1039.  In these circumstances, the allegations are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

"Subject matter jurisdiction defines the Court's authority to hear a given type of case." *U.S. v. Morton*, 467 U.S. 822, 828 (1984).  "Federal district courts are courts of limited jurisdiction that 'may not grant relief absent a constitutional or valid statutory grant of jurisdiction' and are 'presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'"  *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1038 (S.D. Cal. 2013) (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003)).

The burden of establishing that a cause of action falls within a federal district court's limited jurisdiction "rests upon the party asserting jurisdiction"—here, on Plaintiff.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013).  Unlike in a facial attack on subject matter jurisdiction, "[t]he court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039 (citing *White,* 227 F.3d at 1242).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.2003)).

4

B.  Dismissal Under Fed. R. Civ. P. 12(b)(6)

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (internal quotation marks omitted).  Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.  The factual allegations must be sufficient to "raise a right to relief above the speculative level" and "raise a reasonable expectation that discovery will reveal evidence" needed to support the claim. *Id*. at 556.

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022).  "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).

A pro se plaintiff's factual allegations are interpreted liberally on a 12(b)(6) motion, and the court must apply a less stringent pleading standard than if the plaintiff was represented by counsel. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

### III.    JUDICIAL NOTICE

A court may judicially notice facts when they are "not subject to reasonable dispute because," *inter alia*, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court may take such judicial notice either on its own or upon request to do so by a party that supplies the court with sufficient information. Fed. R. Evid. 201(c)(1)-(2). When judicially noticing that a document and its contents exist, the court generally does not take the statements within such a document as true. *See Brookfield Property Group, LLC v. Liberty Mutual Fire Insurance Co.*, 679 F.Supp.3d 971, 977 (C.D. Cal. 2023) (citing *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018)). Separately, however, courts may judicially notice facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc).

Defendants initially request judicial notice of (1) filings in *Williams II*, including the underlying citation and the Notice of Decision (ECF No. 17-2 at 5-9); (2) filings in *Williams I*, including the underlying citation, the Officer's Declaration, and the Notice of Decision (ECF No. 17-2 at 11-19); and (3) filings in *Williams III*, including the Petition for Emergency Equitable Injunction, the denial thereof, and the Request for Dismissal (ECF No. 17-2 at 24-36). All three requests are granted.

After filing their reply, Defendants also requested judicial notice of fifteen purported statements of fact. ECF No. 24 at 2-3. Defendants argue that these facts are supported by two exhibits Plaintiff previously submitted with his motion for a TRO, which the undersigned heard on April 10, 2025. ECF No. 24 at 2, 5-8. Without reiterating all fifteen statements, some state the facts asserted in such documents, whereas others concern events that occurred based on the fact that the documents exist. The Court will only "judicially notice" the latter category.

////

////

////

////

6

## IV.    ANALYSIS[3]

A. <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment to the United States Constitution bars a federal action against states "unless they have waived sovereign immunity or other exceptions to the doctrine apply." *In re. Pacific Gas and Elec. Co.*, 263 B.R. 306, 313 (N.D. Cal. 2001) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996)).  *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Quern v. Jordan*, 440 U.S. 332, 337 (1979)).  A state official sued in his official capacity, but not his personal capacity, has the same immunity as the state from suit in federal court under the Eleventh Amendment.  *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

The parties do not meaningfully dispute that the CHP itself enjoys Eleventh Amendment immunity as an arm of the State of California.  *See* ECF No. 17-1 at 9.  Defendants further argue that immunity from suit for monetary damages extends to Officer Wade, who was acting in his capacity as a CHP officer.  ECF No. 17-1 at 9-10 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).  As Plaintiff notes, however, this suit is brought against Officer Wade in his personal capacity.  ECF No. 18 at 4.  "State officials can be sued in their personal or individual capacities without running afoul of the Eleventh Amendment." *Peralta v. California Franchise Tax Board*, 124 F.Supp.3d 993, 1001 (N.D. Cal. 2015).

Augmenting this holding is the *Ex Parte Young* doctrine, which permits suit against state officers in their individual capacities to obtain prospective injunctive relief.  *See In re. Pacific Gas and Elec. Co.*, 263 B.R. at 313 (citing *Ex Parte Young,* 209 U.S. 123 (1908)).  This doctrine reflects "the fiction that such a suit is not an action against a 'State' and is therefore not subject to the sovereign immunity bar." *In re. Pacific Gas and Elec. Co.*, 263 B.R. at 313 (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin,* 223 F.3d 1041, 1045 (9th Cir.2000)).  By suing

---

[3]  Attached to Plaintiff's opposition are his objections to the Findings and Recommendations regarding his TRO motion.  ECF No. 18-1.  Those objections were filed separately (ECF No. 19) and considered by the district judge in evaluating the TRO Findings and Recommendations.  Plaintiff's opposition, however, never cites these objections or otherwise connects them to the motion to dismiss.  The Court will not consider the objections in ruling on the motion to dismiss.

Officer Wade, Plaintiff can in principle seek an injunction compelling the release of an impounded vehicle and enjoining enforcement of any licensing and registration requirements. *See* ECF No. 1 at 5.  Eleventh Amendment immunity merits dismissal of this action only as against the CHP.

### B. Standing

Plaintiff seeks three different forms of injunctive relief, the first being the return of the impounded vehicle.  ECF No. 1 at 5.  Defendants previously notified the Court that they released the vehicle to the lender and legal owner, Wells Fargo Auto.  ECF No. 15 at 2.  Defendants now argue that because Wells Fargo is not a party to this action, the Court cannot order it to return the vehicle to Plaintiff.  ECF No. 17-1 at 10.  Plaintiff responds that this does not necessarily moot the request because of the voluntary cessation doctrine.  ECF No. 18 at 4 (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 174 (2000)).

As Defendnats properly note, the voluntary cessation doctrine is not relevant to this case.  ECF No. 22 at 2.  They did not rescind an allegedly unconstitutional policy, but rather released a vehicle to the legal owner in accordance with their duty to do so.  ECF No. 22 at 2.  Alternatively, Defendants argue that the fact that Wells Fargo owns the truck, and Plaintiff has been silent on whether he can take it back from Wells Fargo, means that Plaintiff cannot establish standing for any action involving recovery of the truck.  *Id.* (citing *Friends of the Earth*, 528 U.S. at 190).

Plaintiff does not dispute that Defendants released the vehicle in accordance with its duty under the California Vehicle Code to release it to the legal owner.  Nor does Plaintiff explain under what circumstances Defendants could try to reclaim it, including for purposes of returning the vehicle to Plaintiff.  Plaintiff's request for an injunction that would require Defendants to return the vehicle to him is therefore moot.

This does not affect Plaintiff's request for other forms of injunctive relief, including an order enjoining future impoundment based on invalid registration or retaliation "for asserting his constitutional right to travel."  ECF No. 1 at 5-6.  The question becomes whether Plaintiff has stated a claim on which such relief could be granted.

////

8

C. Fundamental Right to Travel

The Complaint argues that driver licensing and registration requirements as a whole constitute "arbitrary and impermissible" restrictions in Plaintiff's "fundamental" right to non-commercial travel, impermissibly transforming this right into a privilege. ECF No. 1 at 3-4. Defendants argue that under *Attorney General of New York v. Soto-Lopez*, the right to travel is in fact a right to "interstate migration", which Plaintiff does not allege he was exercising. ECF No. 17-1 at 12 (citing 476 U.S. 898, 902–03 (1986)). Without addressing this argument, Plaintiff responds that any restriction on the right to travel is subject to strict scrutiny and must therefore both serve a compelling government interest and be narrowly tailored to serve such interest. ECF No. 18 at 3 (citing *Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969)). Alternatively, Plaintiff reframes this as an equal protection claim, with him as either a class of one or the target of wealth-based discrimination. ECF No. 18 at 3 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Bearden v. Georgia*, 461 U.S. 660 (1983); *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966)).

Defendants overstate the holding of *Attorney General of New York*. The case concerned the State of New York's "civil service employment preference," which awarded extra point to civil service examination scores to "New York residents" honorably discharged from the armed forces if they "were residents of New York when they entered military service." *Attorney General of New York*, 476 U.S. at 900. The Supreme Court only reframed "the constitutional right to travel" as "the right of free interstate migration" because the residency requirement "classif[ied] residents according to the time they established [state] residence, result[ing] in the unequal distribution of rights and benefits among otherwise qualified bona fide residents." *Id.* at 902-903. In framing the issues this way, the Supreme Court did not limit the right to travel, particularly as *Attorney General of New York* opinion also described this right more broadly as "freedom to enter and abide in any State in the Union." *Id.* at 902 (quoting *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972)).

However, while the impoundment of Plaintiff's vehicle may be a practical impediment to free movement and travel, "burdens on a single mode of transportation do not implicate the right

9

to interstate travel[,]" and "[Plaintiff] does not have a fundamental 'right to drive.'" *Miller v. Reed*, 176 F.3d 1202, 1205-06 (9th Cir. 1999); *see also Cholerton v. Brown*, 2014 WL 3818049, at *4 (C.D. Cal. May 16, 2014) ("To the extent Plaintiff argues that his fundamental right to travel was violated by impoundment of his vehicle and/or imposition of state vehicle registration requirements on Plaintiff, … there is no merit to these contentions."); *McCain v. Stockton Police Dept.*, 2011 WL 4710696, at *5 (E.D. Cal. Oct. 4, 2011) ("To the extent plaintiff contends that her fundamental right to interstate travel is violated by impoundment of her Vehicle or state requirements that she register the Vehicle and possess a valid driver's license, that claim fails as a matter of law."). Plaintiff's right to free movement was not violated by California's licensing and registration requirements.

Precedent also forecloses an equal protection challenge to the relatively heavier burden registration requirements place on people of limited means. *See Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.*, 466 F.2d 552, 554 (9th Cir. 1972) ("A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional."). Moreover, courts in the Ninth Circuit have precluded an equal protection claim based on restrictions on a single mode of transportation. The court in *Mendoza v. Garrett*, for example, affirmed the constitutionality of a statutory scheme whereby the failure to pay traffic violation fines resulted in suspension of a driver's license. 358 F.Supp.3d 1145, 1151, 1175, 1180 (D. Or. 2018). It cited *Miller*'s holding that any "burden on a single mode of transportation does not implicate the constitutional right to interstate travel[,]" while noting that wealth-based discrimination is not a basis for strict scrutiny. *Id.* at 1172-73 (citing 176 F.3d at 1205). Such schema are therefore subject to only rational basis review, under which the law will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Mendoza*, 358 F.Supp.3d at 1175 (quoting *Franceschi v. Yee*, 887 F.3d 927, 940 (9th Cir. 2018)). The need to enforce traffic laws and deter future violations constitutes such basis, even if such penalties "may be overinclusive by its enforcement as to indigent traffic debtors with no means of paying the fine[.]" *Mendoza*, 358 F.Supp.3d at 1175.

Nor are the allegations adequate to support a class-of-one claim.  Such a claim requires facts showing that government actors (1) intentionally (2) treated plaintiff differently than other similarly situated persons, (3) without a rational basis.  *Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2010).  The Complaint does not discuss similarly situated persons, and Plaintiff's opposition brief does not suggest that he can amend the pleadings to allege that Defendants have not impounded other driver's vehicles during similar traffic stops.

Any claim based on the right to travel, inclusive of any related Equal Protection Clause claim, should therefore be dismissed.

D. Unreasonable Search under the Fourth Amendment

The Complaint alleges that Officer Wade violated Plaintiff's Fourth Amendment rights by, *inter alia*, performing an "unsanctioned stop" and a "warrantless search of his vehicle[.]"  ECF No. 1 at 4.  A traffic stop or other investigative stop is not prohibited by the Fourth Amendment if the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *United States* v. *Cortez*, 449 U.S. 411, 417-418 (1981)).  The "reasonable suspicion" needed depends on "both the content of information possessed by police and its degree of reliability."  *Navarette*, 572 U.S. at 397 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).  The level of suspicion required is greater than a hunch but less than either probable cause of proof by preponderance of the evidence.  *Navarette*, 572 U.S. at 397 (internal citations omitted).

Defendants argue that by conceding Plaintiff's vehicle was not displaying valid license plates, a violation of California Vehicle Code § 5200, the Complaint admits Officer Wade had probable cause for the stop.  ECF No. 17-1 at 14 (citing ECF No. 1 at 3).  Defendants add that under *Whren v. United States*, whatever subjective intent or personal motivations Officer Wade may have had become irrelevant.  ECF No. 17-1 at 14 (citing 517 U.S. 806, 813-814 (1996)); *see also id.* at 812 ("Not only have we never held…that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary.")

Plaintiff responds that *Delaware v. Prouse* prohibits stopping a driver "for no reason other

11

than to check his license and registration, observing no traffic violation beforehand." ECF No. 18 at 2 (citing 440 U.S. 648 (1979)). The officer in *Prouse* did not have nearly the same degree of reasonable suspicion as Officer Wade. He admitted that he "observed neither traffic or equipment violations nor any suspicious activity" before stopping to check the driver's license and registration. *Prouse*, 440 U.S. at 650. Nor was he following any state or local guidelines or procedures related to such "document spot checks[.]" *Id.* He effectively admitted that he only chose to pull this driver over because he "wasn't answering any complaints" at the time. *Id.* at 651. Notably, the Supreme Court then held that such a stop violates the Fourth Amendment "except in those situations in which there is at least articulable and reasonable suspicion *that a motorist is unlicensed or that an automobile is not registered*, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law[.]" *Id.* at 664 (emphasis added). The Complaint here concedes that Plaintiff's vehicle did not display valid registration, plainly placing these circumstances within this exception. ECF No. 1 at 2-4.

Nor does Plaintiff cite any authority supporting his contention that an officer's personal animus can invalidate such reasonable suspicion. ECF No. 18 at 2. In any case, as Defendants note, this is a conclusory statement without any factual allegations to demonstrate that Officer Wade stopped Plaintiff based on anything but the observed violations of the California Vehicle Code. ECF No. 22 at 9.

The claim for unreasonable search under the Fourth Amendment should be dismissed without leave to amend.

 E. <u>Unreasonable Seizure under the Fourth Amendment</u>

  1. <u>The Community Caretaking Doctrine Justifies the Impoundment as Pled</u>

As discussed above, the Complaint alleges that the "seizure and impoundment" of Plaintiff's vehicle was unconstitutional based on his right to travel. *See supra* IV.C; ECF No. 1 at 3-4. The parties' briefs discuss this impoundment as a separate claim for unreasonable seizure under the Fourth Amendment. Plaintiff argues that even if the initial stop was justified, Defendants' decision to tow and retain the vehicle for over 30 days was prohibited under the Fourth Amendment. ECF No. 18 at 2. In the absence of a warrant, at issue is whether the

impoundment fell under any exception to the Fourth Amendment's warrant requirement. *See id.*

Defendants argue that although the Complaint asserts they only impounded the vehicle for its lack of license plates, judicially noticeable documents also cite the expired registration and lack of appropriate license classification. ECF No. 17-1 at 14 (citing ECF No. 17-2 at 7). Driving with registration that expired more than six months prior is an impoundable offense under California Vehicle Code § 22651(o)(1)(A). ECF No. 17-1 at 14. Plaintiff was convicted in *Williams I* of operating the vehicle without valid registration on May 27, 2024. *Id.*; ECF No. 17-2 at 13, 17-18. Because Plaintiff did not renew the vehicle registration between *Williams I* and Officer Wade's traffic stop on February 21, 2025, Plaintiff's registration was out of date for well over six months. ECF No. 17-1 at 14-15.

That an ordinance or statute authorizes impoundment in a particular circumstance "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Crago v. Knacke*, 2020 WL 3073771 at *3 (E.D. Cal. June 10, 2020) (quoting *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005)). Courts have found impoundment based on traffic infractions unconstitutional unless an exception to the warrant requirement also applied— particularly the community caretaking doctrine. *See Miranda*, 429 F.3d at 864. This doctrine generally "permits government officials to remove vehicles from the streets when they jeopardize public safety and the efficient movement of vehicular traffic." *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) (internal citations and quotations omitted). Evaluating the constitutionality of an impoundment accordingly requires a fact-intensive inquiry in most cases. *Id.* ("Whether this exception applies turns on the facts and circumstances of each case.").

The Ninth Circuit has stated that the community caretaking exception allows for impoundment "if the driver is unable to remove the vehicle from a public location without continuing its illegal operation." *Miranda*, 429 F.3d at 865. On that basis, courts have consistently found impoundment of an unregistered vehicle to be reasonable under the Fourth Amendment. *See Leslie v. City of Sand City*, 615 F.Supp.2d 1121, 1125-26 (N.D. Cal. 2009) (in case involving expired registration, stating that "if allowing a driver to remove a vehicle would result in violation of a traffic regulation, impoundment of a vehicle is reasonable" under the

13

Fourth Amendment); *Constitution of U.S. v. Southwick*, 2008 WL 5111144, at *2-3 (D. Or. Dec. 1, 2008) (quoting *Miranda* to justify impoundment where, among other violations, "the truck had no license plates displayed," in violation of Oregon law); *see also United States v. Cartwright*, 630 F.3d 610, 616 (7th Cir. 2010) (upholding the impoundment of the defendant's vehicle, based in part on the fact that "no one could have lawfully driven [the] car from the scene").

Because the judicially noticeable documents establish that the vehicle's registration had lapsed, Plaintiff could not further drive the vehicle without continuing to violate California Vehicle Code § 22651(o)(1)(A).  The community caretaking doctrine therefore justifies impounding the vehicle to remove it from a public road.  The Complaint currently fails to state a claim for unreasonable seizure based thereon.

### 2. Leave to Amend Should be Granted

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Akhtar*, 698 F.3d at 1213.  The question becomes whether Plaintiff should be granted leave to amend the Complaint to articulate why the community caretaking doctrine did not justify impounding his vehicle.

This Court has previously noted that the community caretaking doctrine may not apply to Plaintiff if "anyone was available to assist him in moving his vehicle by, for example, bringing a trailer to tow his vehicle to Plaintiff's home or another private property."  ECF No. 16 at 6. Plaintiff now cites *Mateos-Sandoval v. County of Sonoma*, where a district court refused to authorize impoundment under the community caretaking doctrine where a licensed driver was available to move a vehicle that had at the time of the stop been operated by an unlicensed driver. ECF No. 18 at 3; 942 F. Supp. 2d 890, 910 (N.D. Cal. 2013).  During the hearing on Plaintiff's motion for a TRO, he argued that he could have asked one of several neighbors to help him move the vehicle by putting it on a trailer if Officer Wade had let him walk two blocks to obtain cellular signal and make a phone call.  ECF No. 23 at 22-25.  Amending the Complaint to include this fact may demonstrate that the vehicle could have been removed from the public road without impounding it.

14

Defendants argue in reply that *Miranda* articulates two other reasons the community caretaking doctrine may authorize impounding a vehicle, both of which apply here.  ECF No. 22 at 9 (citing 429 F.3d at 868-69).  As to the first, fulfilling an officer's "duty to prevent [a vehicle] from creating a hazard to other drivers[,]" Defendants note that Officer Wade cited Plaintiff for unsafe towing of a load exceeding 14,000 pounds.  ECF No. 22 at 9 (citing ECF No. 17-2 at 7); *Miranda*, 429 F.3d at 864.  As to the second, the duty to prevent the Vehicle from "being a target for vandalism or theft[,]" Officer Wade was purportedly concerned about someone stealing Plaintiff's tools and trailer if the Vehicle was left abandoned.  ECF No. 22 at 9; *Miranda*, 429 F.3d at 864.

Neither explanation would render leave to amend the complaint futile.  To the extent that towing over 14,000 pounds was "unsafe," Plaintiff also testified that he had the chains necessary to address that issue on site by further securing the load.  ECF No. 23 at 16.  Because Plaintiff may amend the Complaint to include this fact, the Court cannot assume that this payload would have remained a road hazard if Officer Wade had granted Plaintiff such an opportunity.

 Meanwhile, although Officer Wade may have expressed concerns about theft during the traffic stop (see ECF No. 13-4), whether such concerns were genuine remains in dispute.  This is particularly true when, as here, Plaintiff has asserted that the timeframe he would have left the vehicle and his tools unattended until a neighbor arrived was relatively limited.  *See* ECF No. 23 at 22-25.

Plaintiff may be able to amend the Complaint to show that the community caretaking doctrine did not justify impounding the vehicle.  Leave to so amend the Complaint should therefore be granted.  Because a claim for unreasonable seizure under the Fourth Amendment could then be adequately pled, the Court need not address at this time whether, under *Brewster v. Beck*, continuing to impound the Vehicle without further justification would in itself constitute an unreasonable seizure.  *See* ECF No. 18 at 3 (citing 859 F.3d 1194 (9th Cir. 2017)).

F.  Qualified Immunity

Under *Ex Parte Young*, Plaintiff may seek injunctive relief against Officer Wade based on his claim for an unreasonable seizure once amended.  *See supra* IV.A.  Whether Plaintiff may

15

also seek civil damages from Officer Wade depends on whether Officer Wade is shielded by qualified immunity.

When a state officer is sued in his individual capacity, he enjoys qualified immunity for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Longoria v. Pinal County*, 873 F.3d 699, 704 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  In other words, qualified immunity applies unless (1) the officer's conduct violated a constitutional right when the allegations are taken in the light most favorable to the party asserting as much, and (2) this right was "clearly established" as of the infringement.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  However, if a court determines that a right has not been clearly established, it need not determine whether the factual allegations suggest that any such right was actually violated. *Pearson*, 555 U.S. at 236-37.

The Ninth Circuit has held that if the right is not obvious, it can only be clearly established by either controlling prior precedent or a "consensus" of courts outside the relevant jurisdiction.  *See Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).  Specifically, the plaintiff must identify a case or cases "where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment."  *Sharp*, 871 F.3d at 911 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011) (holding that "clearly established law" cannot be based on "a high level of generality")

Once amended, Plaintiff's claim for unreasonable seizure stems from Officer Wade's decision to impound the vehicle when Plaintiff could have conceivably asked a neighbor to safely and legally get it off the public roads.  *Mateos-Sandoval* does suggest that this possibility removed the impoundment from the community caretaking doctrine.  *See* 942 F. Supp. 2d at 910. However, as a district court case, *Mateos-Sandoval*, does not qualify as controlling Ninth Circuit authority.  Moreover, *Mateos-Sandoval* does not address lack of registration specifically or whether an officer must let the vehicle's owner leave the scene to contact obtain the assistance of another individual.  Plaintiff cites no authority on this point, nor is the right to recruit an assistant

16

by leaving the scene so obvious as to not require controlling precedent.

Qualified immunity precludes any suit for damages against Officer Wade based on his impoundment of the vehicle. Amending the Fourth Amendment claim will only permit Plaintiff to preserve claims for injunctive relief in the absence of another viable claim.

G. Procedural Due Process

Although the Complaint does not currently include a claim for deprivation of procedural due process, the parties discuss whether Plaintiff could articulate such a claim based on the facts currently alleged. The Court will accordingly determine whether leave to amend to assert a procedural due process claim should be granted.

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Board of Educ. of Lynnwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). To determine if existing procedures are adequate under the *Mathews* framework, courts consider "(1) [the person's or entity's] private property interest, (2) the risk of an erroneous deprivation of such interest through the procedures used, as well as the value of additional safeguards, and (3) the Government's interest in maintaining its procedures, including the burdens of additional procedural requirements." *Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury*, 686 F.3d 965, 979 (9th Cir. 2012) (quoting *Foss v. Nat'l Marine Fisheries Serv.,* 161 F.3d 584, 589 (9th Cir.1998) (citing *Mathews,* 424 U.S. at 334–35)).

The Ninth Circuit has recently explained how to reconcile *Mathews* with an older standard under *Mullane v. Central Hanover Bank & Trust Co.*, an opinion predating *Mathews* by twenty-six years. *Grimm v. City of Portland*, 971 F.3d 1060, 1065 (9th Cir. 2020) (citing 339 U.S. 306, 319 (1950)). *Mullane* held that due process requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections ... with due regard for the practicalities and peculiarities of the case.

17

*Grimm*, 971 F.3d at 1065 (quoting *Mullane*, 339 U.S. at 314-15).  After some confusion as to whether *Mathews* subsumed this standard, *Dusenbery v. United States* held that *Mullane* continues to apply when "the adequacy of the method used to give notice" is at issue.  534 U.S. 161, 162 (2002).  As *Grimm* summarized this rule, "*Mathews* governs the question of whether and when due process requirements, including notice, is required, but *Mullane* governs [an] adequacy of notice claim."  971 F.3d at 1067.

District courts have therefore found that *Mullane* applies when the parties agree that a defendant must provide some notice to a plaintiff.  *See Brewster v. City of Los Angeles*, 672 F.Supp.3d 872, 949 (C.D. Cal. 2023).  The question then becomes "whether the notice was 'reasonably calculated to apprise [Plaintiffs] of the pendency of the action' and to 'afford them an opportunity to present their objections,' and in turn whether the notice was of 'such nature as to reasonably convey the required information[.]'"  *Id.* at 949-50 (quoting *Mullane*, 339 U.S. at 314) (parentheticals original).

1.  Remedies Upon Impoundment

Defendants first argue that Plaintiff may have a protected property interest in his vehicle, but not in driving it without valid registration and licensing.  ECF No. 17-1 at 11.  The requested injunctive relief concerns Defendants' ability to impound the vehicle, albeit under particular circumstances.  ECF No. 1 at 5-6.  Such impoundment impacts Plaintiff's general property interest in his vehicle, undermining the distinction that Defendant attempts to make.

Defendants then argue, however, that Plaintiff cannot plead a lack of procedural protections because he failed to take advantage of available protections.  ECF No. 17-1 at 11.  For example, Plaintiff argues that California Vehicle Code §22852(a) entitles anyone whose car is impounded to a post-impoundment hearing.  ECF No. 18 at 3.  Defendants respond that Plaintiff has effectively admitted that Officer Wade informed him of his right to this hearing.  ECF No. 22 at 6.  At the April 10, 2025 evidentiary hearing on his motion for a TRO, Plaintiff submitted a copy of the notice CHP mailed to him about his right to request an administrative hearing within 10 days.  ECF No. 14-2 at 3; ECF No. 24 at 6.

Whether Plaintiff in fact failed to request such a hearing remains in dispute.  The

18

undersigned has previously found that "when Plaintiff called CHP to request that hearing, he was told that he could recover his vehicle by registering it, but that otherwise he needed to file a lawsuit." ECF No. 16 at 4.  In ruling on this motion to dismiss, the Court cannot assume that Plaintiff waived his right to this post-deprivation hearing to the extent that it would preclude his claim.  *See Boquist*, 32 F.4th at 773.

Defendants are correct, however, that the citation also warned Plaintiff of the April 29, 2025 hearing date in *Williams II*, at which he did not appear.  ECF No. 22 at 7; ECF No. 17-2 at 7, 9.  Plaintiff thereby waived an opportunity to contest the charges under California Vehicle Code §§ 4000(a)(1) and 12500(d) that led to the vehicle's impoundment.  ECF No. 17-1 at 11; ECF No. 17-2 at 9.  He also chose to voluntarily dismiss his petition in *Williams III*, which sought the release of his vehicle.  ECF No. 17-1 at 11, n.1; ECF No. 17-2 at 32-34.  Defendants further argue that Plaintiff had to know about these remedies from the start because he was issued at least one earlier traffic citation, leading to his conviction in *Williams I* for operating an unregistered vehicle.  ECF No. 17-1 at 11-12; ECF No. 17-2 at 13, 18.

Plaintiff's litigation history, when combined with the written instructions and notices on Officer Wade's citation, demonstrate that he had more than adequate notice under *Mullane* as to how he might challenge the impoundment of his Vehicle.  The circumstances surrounding the impoundment itself do not give rise to a procedural due process claim.

2.  Release to Wells Fargo

Plaintiff then argues that the lack of a notice or hearing before releasing the vehicle to Wells Fargo constitutes a second deprivation of procedural due process.  ECF No. 18 at 3. Defendants argue that because Wells Fargo and Plaintiff were both registered and legal owners of record, it notified Wells Fargo of the impoundment at the same time as Plaintiff.  ECF No. 22 at 6.  CHP was then required to release the vehicle "[t]o the legal owner or the legal owner's agency" after said owner pays all towing and storage costs, and signs an affidavit confirming they were not in possession of the vehicle at the time of impoundment.  *Id.* at 8; Cal. Veh. Code § 22852(o)(3)(C)(i)-(ii).  CHP was only required to offer a hearing "to determine the validity of the storage," which was not in dispute at the time of Wells Fargo's repossession.  ECF No. 22 at 8;

Cal. Veh. Code § 22852(a).

Plaintiff frames this issue, however, as "Wells Fargo's failure to provide Plaintiff" with notice that it had reclaimed the vehicle. ECF No. 18 at 3. In doing so, Plaintiff seems to acknowledge that Wells Fargo, a private entity, is responsible for the deprivation of his property interest. He argues that Wells Fargo can still be held accountable because it acted jointly with CHP officials. *Id.* (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982)).

"A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). However, "[t]o prove a conspiracy between the [state] and [the private party] under § 1983, [the plaintiff] must show 'an agreement or "meeting of the minds" to violate constitutional rights.'" *Id.*; *accord O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023). "The defendants must have, 'by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* "For example, a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' may allow a jury to infer the existence of a conspiracy." *Id.* "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441.

In *Franklin*, however, the Ninth Circuit cautioned courts that private actors should only be found liable if there was "a substantial degree of cooperation" between them and the state officials at issue. 312 F.3d at 445. It also held that private actors can only be held liable for conduct committed by the state actor if "the private individual was the proximate cause of the violations." *Id.* (citing *King v. Massarweh,* 782 F.2d 825, 829 (9th Cir.1986)). Nor can courts make this finding without "some showing that a private party had some control over state officials' decision" to commit the act in question. *Franklin*, 312 F.3d at 446 (quoting *King*, 782 F.2d at 829).

Assuming *arguendo* that Plaintiff were to add a procedural due process claim against

20

Wells Fargo, he offers no facts to demonstrate that Wells Fargo conspired with Defendants.  As Defendants note, they released the vehicle to Wells Fargo because they believed the Vehicle Code required such release.  ECF No. 22 at 8.  Plaintiff does not allege any facts to suggest that Defendants and Wells Fargo agreed to transfer possession of the vehicle, with the understanding that this would infringe on Plaintiff's right to repossess it.  The release of the vehicle to Wells Fargo does not raise any procedural due process concerns.

### 3.  Conclusion

To the extent that Plaintiff seeks leave to amend his Complaint to add a claim for deprivation of procedural due process, the undersigned recommends denying such a request.

### H.  Leave to Amend

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Akhtar*, 698 F.3d at 1213.  As discussed above, the only claim which may be cured via amendment is for unreasonable seizure.  *See supra* IV.E.  Specifically, Plaintiff may plead additional facts showing that the community caretaking doctrine did not justify impounding his vehicle because he had options for otherwise removing it from the street.  *See supra* IV.E.2.  This does not extend to claims for monetary damages against Officer Wade, however, because Plaintiff cannot demonstrate that qualified immunity does not apply to this impoundment.  *See supra* IV.F.

For every other claim and prayer for relief that the undersigned finds deficient, leave to amend would also be futile.  Plaintiff does not attempt to argue that either the CHP or Officer Wade in his official capacity have waived Eleventh Amendment immunity.  *See supra* VI.A; ECF No. 18 at 4.  No facts suggest that Plaintiff can amend his claim to show that Officer Wade could return his vehicle (*see supra* VI.B), that licensing and registration requirements infringe on his right to travel (*see supra* VI.C), or that Officer Wade should not have stopped the vehicle for lack of valid license plates (*see supra* VI.D).  Underscoring the latter point is Plaintiff's prior admission that he still has not obtained California registration for the car, and will not do so until judgment is entered against him.  *See* ECF No. 23 at 21:21-22:8.  This admission also frustrates any procedural due process claim Plaintiff might seek to articulate with regard to transfer of the

21

vehicle to Wells Fargo, as Defendants would have never released the impounded vehicle to Plaintiff without proof of valid registration. *See supra* VI.F.2.

Leave to amend should be limited to whether the impoundment of Plaintiff's vehicle exceeded the scope of the community caretaking doctrine.

## V.    CONCLUSION

Accordingly, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (ECF No. 17) is:

   a. GRANTED as to any claim against Defendant CHP WITHOUT LEAVE TO AMEND;

   b. GRANTED as to Plaintiff's request for return of his vehicle WITHOUT LEAVE TO AMEND;

   c. GRANTED WITHOUT LEAVE TO AMEND as to Plaintiff's claims against Officer Wade for:

      i. Violation of the fundamental right to travel;

      ii. Performance of an unreasonable search under the Fourth Amendment;

      iii. Deprivation of procedural due process, to the extent that the Complaint alleges one or could be amended to allege one;

   d. GRANTED as to Plaintiff's request for recovery of fees and costs associated with his vehicle's impoundment WITHOUT LEAVE TO AMEND; and

   e. GRANTED as to Plaintiff's claim against Officer Wade for unreasonable seizure under the Fourth Amendment, but WITH LEAVE TO AMEND as to why the community caretaking doctrine does not justify such seizure, to the extent that Plaintiff seeks some other injunctive relief not precluded by the recommendation above.

2. Should Plaintiff wish to continue pursuing injunctive relief in this action, he shall file his First Amended Complaint within 30 days of the district judge's adoption of these findings.

These findings and recommendations are submitted to the United States District Judge

22

assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**SO ORDERED**.

DATED: March 19, 2026

_____

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE